Will the attorneys who are going to argue the case please approach the bench, indicate who you represent. Remember that the microphone is for recording purposes, not for amplification to the rest of the courtroom. I'm Gerald Lurie, L-U-R-I-E, on behalf of the appellants. Good afternoon, your honors. I'm Michael Gabelson. With me is Charles Valente. We represent Intermix Holdco. Mr. Lurie, how much time do you want for the rebuttal? Five minutes. Five? Sure. We all set? All set. Very well. Speak up now so the young, new lawyers in the back of the courtroom can hear a very experienced, seasoned appellant lawyer, who, by the way, when I was in private practice, he used to beat me up all the time. Well, after 40 years, I still am a little nervous on appeal, so please, no more pressure than is warranted. Good afternoon, justices. The job of exercising lease renewal option, which is an issue in this appeal, fell to a gentleman named Matthew Irwin, who was a member of the real estate law department at the Gap, which is Intermix's parent. And this is what Mr. Irwin produced, this November 29th, 2016 letter, which is C-274 in the record. Mr. Irwin saw it all very well. In the second paragraph, he identified the correct lease. He identified the correct lease provision. He said that Intermix, the tenant, was exercising its right to extend the term of the lease. But in the third paragraph, there was an inkling that Mr. Irwin might have not been paying attention because there is a reference in the third paragraph to co-tenancy rights. Co-tenancy rights are typically present in a shopping center lease, such as Old Navy would say. Not in this lease. There are no co-tenancy provisions in this lease. But when you get to the signature line, that's where the indication that Mr. Irwin might not have been paying attention becomes clear because he signed this letter, Old Navy LLC, by Matthew Irwin, Senior Director, as its Senior Director and Associate General Counsel. Now, if it didn't have that, if it just said by, would that have been okay? By, with just the name Matthew Irwin? No. That would not be all right? No, because Matthew Irwin would not have been indicating that he was signing on behalf of Intermix. Matthew Irwin was a stranger to the entire relationship between the parties. What's the letterhead entitled? GAP. And GAP was the parent company? Yes. I'm sorry. I'm sorry. Well, the parent company is sending a letter saying that this identified lease, this identified location is being renewed under the terms of the lease agreement. The letter doesn't come from the GAP, Justice Pierce. The letter is signed by Old Navy. Old Navy is not Intermix's parent. But it's on the GAP letterhead. Be that as it may, the signature would have to be from the tenant, not from the parent. Yes. Well, but the body of it defines the tenant as Intermix. And then it says, tenant hereby exercises its right to extend the terms for an additional five years. And then if it's just signed by him, I, we can't ignore the body of it, right? You can't. We can't. Because of lease clause. So what he has to do is put, he doesn't have to talk anything about extending the lease or anything. He just has to put, sign it and put Intermix by, with no body. No. He does have to, he does have to state that Intermix is exercising the option. And then he has to sign it on behalf of Intermix, the tenant. Not Old Navy, a stranger to the lease. Someone who Intermix admits had no authority to exercise the option. Why should an owner have to rely on a notice from a sister corporation that has no relationship with the lease and no part in the conduct of the parties and rely that it is correct that Intermix is exercising this option? How does Old Navy get a position to make that statement? It's Intermix that is required to make that statement. You don't have to, you had it for a month and you don't have to say, where does Old Navy fit in? What about this tenancy rights, you know, the co-tenants? You don't have to do that. You just can wait and then say, oops, that was stupid. I'm sorry, I don't understand your question, Justice Griffin. Are you saying that the landlord should have contacted Intermix and said, No, no, I'm responding to your statement that they don't have to do anything. I don't think I said that. I said that Intermix is required to send a notice of its intention to exercise the lease. What we got was a notice from Old Navy, a stranger to the lease, a stranger to the transaction from the parties, saying, oh, by the way, Intermix is exercising its option. What if the same terms are in the body of the letter and it's signed by Gerald Lurie, attorney? As an issue for Intermix? Gerald Lurie, attorney. With Nelson Richard Black. Gerald Lurie, attorney, is notifying you that Intermix wants to renew the lease term, lease blah, blah, blah, at this location signed Daniel Pierce, attorney. Is that binding? No. Absolutely not. Isn't it correct, though, that Fred Lasko understood it as an attempt to exercise the option? He knew Intermix was trying to exercise the option. Sure he did. And he was trying to take advantage of the mistake. He was taking advantage of the mistake. Absolutely. Just like in all the other cases that we cited in our brief. Indictment, the tenant said a notice five days late. In Thompson Land and Center, there was a question about whether a notice was served, but the cancellation action was served on a timely basis. The landlord sent the cancellation fee back. The courts didn't look to the conduct of the landlords in these situations because an option agreement is a one-way contract, as the court said in Epton. An option agreement is a unilateral contract. The landlord has no rights under this contract. It's up to the tenant to strictly comply. That's because the option is solely for the benefit of the tenant. The tenant didn't pay anything extra for the option. It's a very valuable right. In this case, if Intermix had properly exercised the option, it would have had the benefit of wildly below market rent for five years. At last, the court said, this is between sophisticated business parties. But you don't believe that the attorney would have had a right to exercise the option on behalf of the gap. Is that correct? If he had said that he was acting on behalf of Intermix, yes, he would have had that right. Well, the letter was on the gap letterhead, who is the parent company. Right. And he simply made what may be a scrivener's error by stamping the old maybe at the end, as opposed to stamping the gap. Had it been stamped, excuse me, had it been stamped the gap, then you believe that would have been a correct exercise of the option. No, I don't. But I think it would have been better. I think it would have been a better argument. What's your position on the, I know you object to the attorney's fees, but did you ask for a hearing? I did. And what was the judge's rationale for no hearing? He said that there weren't any issues of fact that he needed to look at. And what about this issue of attorney's fees for lawyers that are not licensed in Illinois? There's no question of lawyers working out of, what, L.A. or New York or California? No, but they did file pleadings in Illinois. Before, one of them was never admitted and filed pleadings in this case. Mr. Gabelson was admitted, but before he was admitted, he filed pleadings in the case. So they weren't working in California. They were working in Illinois. Okay. The trial court was not impressed. And can you, off the top of your head, identify approximately how much of attorney's fees were incurred by non-licensed Illinois lawyers? I did. In the brief, it was $20,000. I'm sorry? Approximately. To tell you the truth, I don't remember. It was in the range of $20,000. $20,000. Okay. So did you have objections to any other portion of the? I did. I hadn't planned to talk too much about the fee petition because I was hoping that the court would see our way on the lease renewal issue. Well, we try to be all-inclusive. Thank you. When the petition was filed, Qualified Interim was submitted with 60 pages of bills from its lead counsel and its local counsel, along with four affidavits where they, not to be impertinent, praised each other for how efficient they were and what a good time they had working with one another. There was nothing to say why it was necessary for local counsel, who described himself as somebody who could show the lead counsel where the courthouse was and how to set up a motion, and Russell's job was to tweak the brief, which was drafted by lead counsel, to make sure that there were no violations of preliminary practice. It's hard to imagine how local counsel could build $71,000 in fees where lead counsel built $60,000 in fees. I think it was unreasonable for the court to allow that without any requirement from the attorneys for intermix as to why all this duplication was necessary. The trial court dismissed the redundancies as saying, well, normal redundancies. What are normal redundancies? If he had gone through, and I have to think that he at least tried to go through the 60 pages of billing, which I color-coded in an effort to help him out, he would have noticed that there were numerous entries which were redundant, but he dismissed them as normal redundancies. I think that was unreasonable abuse of discretion. It could have been a recognition of the trial court of your familiarity with large law firms doing practices. Yeah, well, I was a member of a large law firm. I know how they're closed. But what an attorney does as clients is one thing. If Matthew Ervin wanted to sign off on all of these bills because he was scared to death that he might lose the case, that's his business. But the court is not bound by what Matthew Ervin thinks is reasonable. The court is required to award what is reasonable. In the latter region, I think the court might not have the time or the inclination to read this carefully. Is he allowed, and I don't mean to be picky and picky-oon, he allowed cabs there for local counsel to take a cab to the courthouse. Seriously? Nothing was overhead anymore? I thought that was symptomatic of the trial court's approach. So the question is whether or not the fees are so excessive that it amounts to an abuse of discretion. I'm sorry, Justice Breyer. The question is whether or not the fees are so excessive that it amounts to an abuse of discretion. I think they are. $79,000 from local counsel were the counsel who wrote the briefs, which won the case. Well, I won't say they won the case because I think the trial judge won the case, but who wrote the briefs. Well, $60,000, I think that is so excessive. And one of those two lawyers never completed the 707. Whose brief went to 707? That is correct. The reason I think the signature is critical is Dyckman requires foot compliance. There's no argument about that. The trial court found a way to avoid Dyckman. And to do that, the trial court erased his signature that said, Senior Director and Associate General Counsel, and said that signature standing alone is enough. And to do that, the trial court cited cases that had nothing to do with that issue. The trial court cited cases that dealt with whether a signatory to a guarantee contract cited individually or as an agent for the guarantor. Do you agree there's a conflict between what the body of the letter says and the name above the signature? Do you agree there's a conflict there? He got rid of it. And he got rid of it by applying rules of construction that are not applicable in unilateral contracts. So you do agree there's a conflict. There is no doubt that Matthew Oehling intended to silent on behalf of both Navy. Clearly, that was his intention. But, Jed, the body of the letter. Did he not intend on writing the body of the letter? Sorry? Justice Griffin is asking, is there a conflict between the body of the letter and the signature block? Yes, there is. Okay. Clearly. And so then is it a fact question? It's not a fact question because Intermix admits it was a mistake for the letter to be signed this way. And rules of construction do not apply to unilateral contracts. Justice Mitver wrote an opinion in Beacon for this court in 2017, which defined a signatory as a party who signs a document, and by signing that document becomes a party to an agreement. Here, it was Intermix that had to sign the notice. If it had signed the notice, it would have become a party to the option agreement. The option agreement would have become bilateral. The term of release would have been extended. That didn't happen here. And that is why the failure to sign the option exercise notice amounts to noncompliance with the rule of strict compliance. The rule of strict compliance doesn't say you have to intend to comply strictly. It says you have to comply strictly. Okay. Do you have anything else you want to cover? Yeah, I do. I want to go back to the attorney fee issue. I'm sorry. I'm not a real loud speaker, so I'm going to try to speak up here. But I want to go back to the attorney fee issue. And you're probably familiar with the low theft case or the law theft case, the Illinois Supreme Court's decision in that case from 1977. You're familiar with that. I think you cited it in your brief, where the Supreme Court specifically said that someone who's not licensed to practice law in this state cannot receive fees. Yes. So I guess the question is whether or not the conduct of those lawyers constitutes the practice of law. Is that an issue? Do you believe that's an issue? I'll be asking you the same question. Well, I believe that the Illinois Supreme Court rule says that in order to appear before a tribunal, you need to be admitted. In this case, the one lawyer filed pleadings, signed pleadings, filed them in court below, and never received permission to appear. Were no other names listed? No other attorneys were listed also as signed on to those pleadings? Two lawyers did. Two lawyers, one local and one... No, no, two out-of-state lawyers. Both out-of-state lawyers that signed those documents. Yes. And there were no local lawyers listed as well? No, local lawyers did sign as well. They were co-signed. So you're objecting to any payment to the out-of-state non-authorized lawyers? Yes. Just getting paid? Yes. Anything else, Justices? I can sit down now. Thank you. Thank you. Counsel, could I have your name again, please? Sure. It's Michael Gabelson, G-E-I-B-E-L-S-O-N. Thank you. Thank you. It is another irony that this case comes after the last one that we heard in this courtroom today, where the issue was one where there was no signature. Here we have a clear signature where the principal of the company that receives that signature, the staff of that company that receives that signature, knows every bit about what that signature was intended to do and what the document was that that signature was on, was intended to convey about the very lease that they were considering. And yet we stand before you because they want to take advantage of a technicality, a typographical error, a mistake. It was a mere ministerial mistake, and that's all it is. And there is no question that even without the signature, as Your Honor noted a minute ago, would be absolutely adequate under this lease to satisfy those required as a condition precedent to the option. Counsel referred to it as an option agreement. This is not a separate option agreement. It is a condition precedent to the option that exists under the lease agreement, and we'll get to those provisions. With respect to the fees, which I'll get to in a minute, the court below undertook an entry-by-entry analysis of the fees that were incurred. He reviewed them extensively and ultimately reduced the fees that were claimed by an exacting $10,943.10. And as we'll get to in a moment, he did that by taking his time, complying with his obligation, exercising the discretion that he had. But let me turn back to the lease itself rather than talking about what is not a separate option agreement. In Section 21.01 of the lease, there are three distinct subparts of the obligation in order to exercise the option. The first of those is that the notice must be given at least 120 days before the termination of the lease. That's beyond dispute. This November 29 letter was sent before then. The notice must be in writing. Beyond dispute. So finally, the writing must notify landlord of attendance election to renew the term for the renewal term. Those two cannot be disputed. Specifically, there is no obligation to provide a signature. There is no obligation to strictly comply with a signature requirement. But don't you think that strict compliance is necessary? Strict compliance has been performed in providing all the information in expressing what was required. I would refer your honor to other sections of the lease which do expressly require a signature. And if we're to construe what is required in the lease, we should certainly look to those other provisions as a way to determine whether a signature was required with respect to the option exercise. In that regard, I'd refer your honor to section 20.11, which is for the punch list to be provided by the landlord upon the completion of construction when possession can be given. I'd refer you to section 23.02, which is the modification provision of the lease, so that any modification of it has to be signed by the party to be charged. Similarly, 23.09, which relates to waivers, also requires a signature. So if there is to be exacting requirements, then those are the provisions that would require a signature. This one does not have a similar provision. But you admit that the Old Navy is an error. It was, yes. Yeah. And so wouldn't, if it's supposed to be strict compliance, wouldn't that make the notice insufficient? No, sir. I believe that the error was simply including that, but it was not an error insofar as it altered or failed to materially or even at all comply with what was obliged to be provided under the lease. There was merely a notice that was to be provided. And I think that the example you gave, Justice Pierce, was the one from the, perhaps the Kodansky case. Jack Kodansky v. Fickett, where it's a lawyer that signs a letter. And in that circumstance, there's just, in the same sort of way, a lawyer giving notice of an option exercise, just as there is here. And in it, there's no mistaking what the language, the overwhelming language of that letter means. It states all the specifics that we've referred to. It states who the tenant is. It identifies the lease. It identifies that it's an exercise of option notice. It cites the section of the lease that is under which the right to extend is being given. All of those particulars were included. And I think that's why both sides wound up citing the testimony of the corporate designee for the single deposition that was taken by Mr. Valente, when that witness came in and testified that not only he, but the staff, understood what the letter was intended to do. And if it was just a gotcha, that's exactly what occurred. It was the delay in ever getting back to them, waiting until the 120-day deadline had passed. And it was only then that it could not be corrected in some other way, although we don't contend that any correction was required. And if there is a contractual element to this, then there certainly was a meeting of the minds as to what that letter was intended to do as of the time that it was sent and as of the time that it was received by the very people who were charged with receiving that letter. So we must, though, also remember that this isn't some abstract issue about an interpretation of law that's unburdened by the evidence that was before the court in deciding that matter. This is not a procedural situation in which my opposing counsel could have not taken discovery about these issues if he thought that they were sufficiently important to investigate. And so the only evidence that is before the court on this motion for summary judgment is the declaration of Mr. Irwin, explaining exactly what he said, what he was authorized to do, and what the intent of the letter was. And in that regard, I would refer Your Honor to Paragraph 4. It's the last sentence of Paragraph 4 of Mr. Irwin's declaration, and also Paragraph 7 of his declaration. That's at pages 234 and 235 of the record. And it is in those paragraphs that Mr. Irwin explains both the intent and who the letter was sent on behalf of that is not regarded by any evidence. Could discovery have been taken? Of course. Could they have attempted to create a tribal issue of fact as to authority? Of course. Could they have shown that Old Navy had never authorized the letter to be sent on behalf of the intermix if they wanted to go down that path? Yes. But none of that was done. And so the only evidence that was before the court and the evidence on which the court relied was the declaration of Mr. Irwin and the letter that he explained in that declaration. Without any contravening evidence, there is no tribal issue of material fact that remains. And so we look then to cases also that the trial court relied upon, which were the personal guarantee cases. And they're interesting for one particular reason, at least I thought, which was that in both of them, there was someone that was a principal of the bank signing a guarantee. And the question that was before the court was whether that guarantee was given on behalf of that principal, as essentially a personal guarantee, or if it was instead given on behalf of the entity whose letterhead and everything else it was signed on behalf of. And so there was this factual issue about whether there was a personal guarantee because of that person signing it in the capacity of the signer. There is no similar issue that exists in this case. There is no question about whether Mr. Irwin individually or Old Navy had any rights under this lease. The letter that he sent itself demonstrates the only entity that it could have been sent on behalf of was intermix, the very entity that has the lease that's referred to, that has the option rights, that has the lease with the landlord that the principal and his staff knew it to be. Unless the court has questions in those regards, I'll move to the fee question. So at this time when we began this case, we are lead counsel on a number of cases for the Gap and their subsidiary companies around the country. We interact with the Gap regularly in order to do their work. And in our doing so, we find counsel, able counsel like Mr. Valente, who can not only lead us through the courts but through the many procedures. And if the court were to look down the entire docket of proceedings and orders and appearances that have occurred, this court will find that I only appeared once on the motion for summary judgment. And I did that to give you an argument because we thought it was important to come out and use the things that I have gleaned about the intent and understanding of the parties with my regular interactions with Mr. Irwin. The work that was performed by Mr. Allender largely relates to the claim that was abandoned by the plaintiff in this case. That was all of the construction work. It's referred to in their statement of facts that there are actually two different components of the exercise of the option. The part that they've abandoned was whether the intermix was in default as of the time that the option was to begin on May 1 of 2017. And the reason that they engaged in so much discovery and produced, we had to produce so many documents that are referred to there, is that we got requests for production that essentially asked us for everything related to the construction so that they could see what it was that we began doing with or without their consent, but that they contended was without their consent. Well, I think the central issue is not whether the work was necessary. It's whether non-Illinois licensed attorneys should be paid under the provisions of this contract. And under the provision of the contract, it is not limited to the matters that are recoverable as a matter of law in Illinois courts. There is one standard that should apply to the recovery of attorney's fees where there's some statute or something else under Illinois law that would allow the recovery of those fees. It is another matter entirely to say that the contract and the dispute between the parties should result in the payment of attorney's fees that are incurred by that party. Those are two different standards in our view. And what case law do you have in support? I haven't found it, Your Honor. I've not found anything saying the contrary either. What's the law in California? I'm not trying to box you. I'm just curious. No, sir. I think that there is a distinction about what reasonable attorney's fees are on the one hand because the attorney's fees that are recoverable by statute then... I got it. Yeah. Is there support for your argument under California that in California if you have a contract dispute, nobody goes to court and a bunch of lawyers out of New York work on the case, and the New York lawyers get compensated in California under that contract? I know that it's happened. I don't know about where the compendium of cases would decide that issue, and so I wouldn't want to make a representation. But for me, it's a different question. The question is whether or not you could have sued your client in Illinois and recovered those fees. And I don't believe you could have recovered fees that if you were not licensed to practice law in Illinois. And I think that's the real question. I don't think that an attorney from another state who comes into Illinois and practices law is no different than the old man on the street who doesn't have a law degree, comes into court to represent someone and signs papers and pleadings and comes into court. You're no different. And I think that's what the Supreme Court has said about this. The Illinois Supreme Court has said about this. I accept Your Honor's question. However, I think under the terms of the contract that it's framed differently, including because I know the work that was done, which is that when we provide counsel to the client in order to assist them, for example, in responding to a request for production in cases wherever they are, we use people in a ministerial office to do document review because it's a back office and you can pay them. It's fine. You need to use them for everything if you're not going to be licensed in the state of Illinois. If you're not going to complete the rules pursuant to Illinois, pursuant to Rule 707, then they need to do everything. You're not allowed to file a plea. You can't come before courts in Illinois if you're not licensed in Illinois or authorized to practice in Illinois. So let me correct that misstatement of the record then. I never signed a pleading in this case. All the pleadings in this case were signed by Mr. Valente. There were pleadings that had our signature on them. Did Mr. Valente ever sign pleadings? He did not. He worked on document production. He communicated with experts. He communicated with consultants. Our firm name and his name and mine were included below Mr. Valente's signature on documents. Perhaps they shouldn't have been. I don't know where that lies in the number of potential activities that are or are not precluded. But the fact is that we did not sign any pleadings. And I came before this court only. Mr. Allender never appeared in any proceedings whatsoever. And when I did, it was after the time when I secured the ARDC registration. I continue to have it today if there's any question about that for 2019. And so in the time that we were practicing law, there was consultation that went on. It was not coming before this court and making any assertions of law. It was pursuant to what we were doing in order to try to resolve the dispute. And so what the time limit is also important because we were coming into this case at a time when things were shifting in the courts. It was when this ARDC process was getting adopted. And I do recall that at that time it took a while for us to get the certificates of good standing from the California Supreme Court and then to come into this court to have those procedures get worked out because it wasn't entirely clear who was doing what when. And ultimately it was right in the middle of January or the end of January of 2018 when we got that registration finalized. So if there was some delay in it, there was certainly a procedural reason for that problem. I will say though that in regard to the fees and the reasonableness of fees, I would just ask the court to look at the approach that Judge Schwanigan took at page 76 of the Supplemental Report of Proceedings. It was counsel saying, I'll leave it to the court. I know the court will give a fair reading of those entries and you'll decide whether they move the ball. And whether they were necessary, whether they were related to the litigation, I know you'll do that. And Judge Schwanigan then, after setting the proceeding a week later than he otherwise was going to at page 86 of the transcript, said the following. I'm relieved at the thought that I could have some more time to look entry by entry because I definitely did think that that was my charge. Always, that's what I think I'm supposed to do with fee petitions. And so if the rule is reasonable charges for reasonable services, Judge Schwanigan has already engaged in that. His discretion should not be observed. With that, if the court has any questions. Thank you. Thank you very much. I have to leave it to the court to look to the record to see whether California counsel signed pleadings in this case. Their names are on pleadings and the pleadings are in the appendix. As to whether this was a typographical error or a ministerial mistake, there are no misspellings in here. This is no typo. Mr. Irwin never chose to explain how this ministerial secretarial mistake happened. All you know is that his signature is under Old Navy here. The absence of explanation by him, and curiously, he never chose to explain how it happened. Well, how about if there's no signature, just the body of the letter on the F letter? Inermix said that corporations only act by their human agents. How are we to know that Inermix actually is doing this unless there is a signature for Inermix? Would you accept a blank check? Would you accept a blank option exercise notice with no signature by the party purporting to exercise the action? A blank check wouldn't be effective. I'm just saying, is it a reasonable commercial reaction to get a letter on the tenant's parent company's letter identifying the lease, the provision, the location, the term, and the terms of exercising the action, and then have no signature? I'm asking your opinion. Absolutely not. It would not be effective? No. And it doesn't matter that the regarding section clearly states that it's regarding Intermix. The rule of strict compliance says that you have to strictly comply with the terms of the action exercise. To do that, Intermix has to give notice of its intention. How does it give notice? How does it indicate, manifest its intention? By signing the letter. Signing a letter becomes a signatory, becomes a party to the action exercise. Well, if the principal, excuse me, if the principal, the landlord, says, I know it was the tenant, I know they were trying to exercise, I know all this, then it seems like the lease didn't provide that the signature of the tenant was a material part of the exercise. I mean, that argument is not, on its face, absurd, is it? The action says notify us within a certain period of time before the expiration of the lease that you want to renew the lease. Yes. It doesn't say sign it. It doesn't say have your parent company sign it. So it's just a statement without a signature that would be effective? Well, I don't know. Does the lease provide that a signature is required? The lease says that the tenant has to give notice in writing of its intention. How does it manifest its intention? In writing. By signing. Well. No signature? A blank signature? Maybe some clerk? Apparently Mr. Lasko didn't, wasn't swayed by it. Mr. Lasko never said that he accepted this notice as an exercise. He said, I know they're trying to exercise it. It's a mistake. And consistently, actual knowledge or actual notice has not been a substitute for written notice. In every case indictment, in Ginesco, Thompson Learning, Michigan Wacker, the tenants all said, you knew, you had oral notice. The courts didn't say that was okay. They said oral notice is no substitute for failing to strictly comply with the requirements. We have a signature, and there's no issue that it's an authorized apartment. And there's no issue. I mean, that wasn't raised. So it's just that typewritten maybe LLC. I don't even know if the other ones are Delaware. Maybe that's even right. I don't know. But that's it. That's the problem. It's not the signature. Well, it's the problem because the signature is on behalf of a party to give notice of exercise of the action. If Mr. Irwin had signed Matthew Irwin, Senior Director, Associate General Counsel for InterMix, no problem. We all know that he started out and had the authority to do this. The problem was he never did it. We all know what his intention was. He made a mistake. He never explained how he made the mistake. The only inference to draw from the record was that he was negligent. And InterMix really can't complain about strict compliance because they weren't as stringent in relying on lease provisions. They got out of a $70,000 TAM obligation by saying, uh-uh, the lease says that you have to do it within a year. You didn't do it within a year. Goodbye and good luck for your $70,000. When it came time to that construction dispute, the question was whether InterMix was in default. At the time the lease, the renewal period, commenced, InterMix said the time it commenced was 12.31 in the morning on May 1. If I put the shovel in the ground on this unauthorized construction at 12.32, then you're out of luck. Well, that's pretty strict compliance with the terms of the lease. Does the lease provide that the exercise of the option contains the signature of the tenant or the tenant's representative? Does it provide that? Expressly? Yes. No. It says notice in writing of the tenant's election. How do you manifest your intention to do that? By signing a blank letter? Would you accept such a letter? I'm not supposed to ask questions like that, but you all have a spirit. My point is this is in writing. It is in writing. The letter is in writing, but there's no signature. Is there a signature requirement in the lease? Is there? Yes or no? I'd say no. You don't have to answer. Well, I guess it shows. So I think that you're thinking that something in writing, you believe that something in writing has to have a signature. I believe that this notice has to have a signature. Something that's in writing doesn't necessarily have to have a signature. It has to be in writing. It could have been in their own print or in their own handwriting. The typewritten document is still in writing. Whether or not a signature is required is a separate question, which the lease may or may not answer. Notice of its intention means that it has to manifest its intention. How does a corporation manifest its intention? By signing a letter. You sign the letter. You're a signatory. You become a party to this unilateral contract, which becomes bilateral. Thanks for hearing me. Always entertaining is the word. You don't get any points for being entertaining. Well, you get the admiration of the court. Very gracious. All right. Thank you both. That's an interesting issue. Stay seated. That's fine. We appreciate your efforts in this regard. We'll take the matter under advisement. And thank you for your efforts. The court stands at lease.